John Burton, State Bar No. 86029
jb@johnburtonlaw.com
THE LAW OFFICES OF JOHN BURTON
128 North Fair Oaks Avenue
Pasadena, CA 91103
Tel. (626) 449-8300

Erin Darling, State Bar No. 259724
erin@erindarlinglaw.com
LAW OFFICES OF ERIN DARLING
3435 Wilshire Blvd. Suite 2910
Los Angeles, CA 90010
Tel. (323) 736-2230

Attorneys for Plaintiffs Kimberly Freeman and Kent Freedman, Individually and as the Personal Representatives of Travis Culver Freeman, Deceased

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY FREEMAN, individually and as the personal representative of TRAVIS CULVER FREEMAN, deceased; KENT FREEMAN, individually and as the personal representative of TRAVIS CULVER FREEMAN, deceased,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LOS ANGELES, LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and DOES 1 TO 10,<br><br>Defendants. | Case No. 2:24-cv-1600<br><br>**COMPLAINT FOR WRONGFUL DEATH AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION AND VENUE

1. This case arises under 42 U.S.C. § 1983, the American with Disabilities Act (ADA). Accordingly, federal subject-matter jurisdiction arises under 28 U.S.C. §§ 1331 and 1343. Plaintiff's state-law claims arise from the same case and controversy and are within the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

1

2. Venue is proper in Central District of California pursuant to 28 U.S.C. § 1391, as the underlying acts, omissions, injuries and related facts occurred at Los Angeles County Men's Central Jail (MCJ) involving officials of Los Angeles County. This is an action for damages and such other and further relief as may be consistent with law pursuant to 42 U.S.C. § 1983, to redress violations of Decedent's and Plaintiffs' rights protected by the United States Constitution, by persons acting under color of law. This is also a survivor's action and one for wrongful death brought pursuant to the Constitution, statutes and common law of the State of California.

## PARTIES

3. Decedent Travis Culver Freeman is the son of Plaintiffs Kimberly Freeman and Kent Freeman.

4. Plaintiffs Kimberly Freeman and Kent Freeman are adults competent to bring these claims individually and as successors-in-interest for Decedent pursuant to Cal. Civ. Proc. Code § 377.30. Each has filed a declaration pursuant to Cal. Civ. Proc. Code § 377.32.

5. Defendant County of Los Angeles is a governmental entity organized and existing under the laws of the State of California. Defendant County of Los Angeles Sheriff's Department ("LASD") is a public agency subject to suit. At all relevant times, Defendant LASD was a branch or agency of the County not entitled to Eleventh-Amendment immunity. As alleged above, the County and LASD are collectively referred to as "County Defendants," and together they manage the Los Angeles County jail system.

6. Plaintiffs sue defendants Does 1 to 10 by their fictitious names and will amend this complaint to allege their true identities when ascertained.

7. Defendants Does 1 to 10 are believed to be custody or medical staff assigned to work at Men's Central Jail, which is operated by the LASD and the County.

8. Each individual and Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants County and LASD, and

2

1 in some manner contributed to the death of Decedent, or otherwise caused the
2 deprivation of Plaintiffs' and Decedent's constitutional rights and other harm.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. Plaintiffs timely filed the appropriate administrative claim, which has been denied. This lawsuit is timely.

**FACTS**

**A.   General Allegations re: Policy and Practice**

10. Defendants County and LASD, with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiffs, Decedent, and all persons similarly situated (namely, inmates at the MCJ and their loved ones) maintained, enforced, tolerated, permitted, acquiesced in, and applied polices or practices of, among other things:

> a.   Selecting, retaining, and assigning deputies, custody assistants, medical workers, civilian personnel and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates such as Decedent;
>
> b.   Failing to adequately adopt and maintain security measures to protect detainees, arrestees and inmates from unnecessary illness and harm, including but not limited to, the following failures: failure to custody and medical personnel and civilian volunteers to monitor detainees and inmates and immediately respond to medical emergency, or any other predictable scenario where the physical safety of an inmate would be jeopardized; failure to adequately screen detainees and inmates for medical disabilities, mental health disabilities and addiction to narcotics; failure to timely provide emergency medical care to inmates suffering from mental health or substance abuse issues; failure to conduct timely and adequately safety checks, which substantially increases the risk to vulnerable inmates, especially those with medical, mental,

3

and substance abuse issues; failure to install, maintain, use, and regular monitor the audio monitoring equipment of inmate- or sound-actuated audio monitoring system, which is capable of alerting personnel who can then respond immediately to an emergency (in violation of California Building Code Title 24, Section 1231.2.22, which requires audio monitoring capable of alerting personnel who can respond immediately[1]);

   d. Failing to adequately train, supervise, and control custody and medical personnel, civilian employees or volunteers in proper law enforcement and medical practices, including operating a jail facility, which includes conducting adequate and timely inmate safety checks and responding appropriately to emergencies;

   e. Failing to adequately discipline custody or medical employees involved in misconduct;

   f. Failing to respond to safety-related complaints by detainees and their family members;

   g. Condoning and encouraging employees in the belief they can violate the rights of persons such as Decedent and Plaintiffs with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

  11. Plaintiffs are informed and believe, and on the basis of such information and belief allege, that defendants County and LASD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on

---

[1] *See* Section 1231.2.22, *available at* http://www.bscc.ca.gov/wp-content/uploads/Adult-Title-24-SOUL-2018.pdf

defendants' deliberate indifference, gross negligence, or reckless disregard for the safety, security, and constitutional and statutory rights of Decedent and Plaintiffs.

12. The death of Travis Freeman at MCJ does not exist in a vacuum, but rather occurred in the context of the County Defendants' ongoing inability to prevent in-custody deaths of inmates suffering from mental health and substance abuse issues, and a failure to provide timely medical care to prevent such deaths. For instance, in October 2022, an inmate at MCJ was pronounced dead at the scene after a delay in LASD staff discovering and rendering resuscitative efforts. *See* Office of Inspector General County of Los Angeles, "Reform and Oversight Efforts" (February 15, 2023) at 14.[2] Two months later, in December 2022, an inmate in LASD custody, whose cell appeared to be covered in fecal matter, was discovered unresponsive during a Title 15 Safety Check and there was a delay in rendering resuscitative efforts. *Id.* at 15.

13. The County and LASD are on notice that inmates suffering from mental health and substance abuse issues fail to receive timely ongoing medical care. On February 27, 2023 (three months before Travis Freeman's death), the American Civil Liberties Union of Southern California filed a motion for an order re: contempt for failure to provide adequate medical and mental health care to people in the Inmate Reception Center at MCJ. *See Rutherford v. Cnty. of Los Angeles,* Case No. 75-cv-4111-DDP (C.D. Cal. Feb. 27, 2023) (Dkt. 375). Los Angeles County Supervisor Kathryn Barger acknowledged entrenched problems at MCJ: "Our incarceration model is antiquated and needs to be replaced with a state-of-the art facility staffed with quality professionals who can provide vital substance abuse and mental health treatment."[3]

---

[2] *Available at* https://assets-us-01.kc-usercontent.com/0234f496-d2b7-00b6-17a4-b43e949b70a2/ec1a908d-b955-41a9-807c-d53447bb21c6/Reform%20and%20Oversight%20Efforts%20-%20Los%20Angeles%20Sheriff%27s%20Department%20-%20October%20to%20December%202022.pdf

[3] *Available at* https://www.latimes.com/california/story/2023-02-27/aclu-asks-judge-to-hold-sheriff-supervisors-in-contempt-over-jail-conditions

5

14. In March 2023, less than two months before Travis Freeman died, three inmates at the MCJ died within a nine-day period. In a *Los Angeles Times* article covering this rolling disaster, an American Civil Liberties Union of Southern California senior staff attorney with the stated, "Because the jails are operating 20% over capacity, we're going to continue to see people dying…There are just too many people there for correctional health services to provide adequate medical care and treatment."[4]

### B. The Death of Travis Culver Freeman

15. Decedent Travis Culver Freeman struggled with mental illness and self-medicated with alcohol and opiates. By 2023, Mr. Freeman was addicted to fentanyl and alcohol. In May 2023, Mr. Freeman was living in a trailer park in Van Nuys, using drugs daily and in need of a serious intervention and drug treatment.

16. On May 18, 2023, Mr. Freeman was arrested on an outstanding warrant by the Los Angeles Police Department and transferred to the Men's Central Jail of Los Angeles County, which is administered by the LASD. Defendant LASD was put on notice that he had not been medically cleared and treated by the arresting officer. The County Defendants were on notice that Mr. Freeman used 1-3 grams of fentanyl a day, and consumed a fifth of distilled alcohol (750 ml) a day, prior to his arrest. Furthermore, they were on notice that Mr. Freeman had Hepatitis A, a mental health disorder (a diagnosis of bipolar and schizoaffective disorder), a history of psychotropic medications, and had attempted suicide.

17. Consequently, Mr. Freeman was initially evaluated and treated for opiate and alcohol withdrawal symptoms. Specifically, Mr. Freeman was prescribed 8 mg of Suboxone for treatment of his opioid use disorder. The County Defendants were on notice that Mr. Freeman had gastrointestinal issues and medical staff prescribed him Loperamide.

---

[4] *Available at* https://www.latimes.com/california/story/2023-03-28/three-inmates-died-in-the-los-angeles-county-jails-in-just-over-a-week

6

18. The County Defendants have inadequate procedures for monitoring inmates who are "kicking" opioid addiction, inadequate procedure for maintaining supervision and ongoing medical care of inmates who have mental health and substance abuse issues.

19. For the next twelve days that he was in the County Defendants' custody, Decedent suffered from easily treatable duodenal ulcers that went completely ignored by Doe defendants on the medical and custody staff at the MCJ. Indeed, after vomiting and being sent to urgent care on May 21, 2023, the County and Doe Defendants failed to provide ongoing medical care for the withdrawals and gastrointestinal issues, and failed to provide basic custodial medical monitoring, despite being put on notice of Decedent's myriad mental health and substance abuse issues.

20. Mr. Freeman was assigned to a four-man cell (Cell B4) in Module 2800 at the MCJ. On May 30, 2023, Mr. Freeman's cellmates had to call for a "man down" to get medical attention for him. Previous rounds of purported "safety checks" by Doe defendants working as custody staff failed to notice that Mr. Freeman was in grave peril.

21. Simply put, Doe defendants failed to notice Mr. Freeman's grave condition and had to rely on the cellmate's "man down" cries. Once Doe defendants arrived, they found Mr. Freeman supine on his bunk, pulseless, not breathing, pale, and cool to the touch. Medical staff arrived around thirty minutes later and pronounced Mr. Freeman dead.

22. According to the County medical examiner, Martina Kenendy, D.O., Mr. Freeman's gastrointestinal tract was filled with blood due to duodenal ulcers. Such a condition is easily treated, produces symptoms over an extended period of time, and does not cause sudden death. Doe defendants on both the medical and custody staff were deliberately indifferent to Mr. Freeman's medical needs in that they ignored his obvious suffering, symptoms and need for help, and failed to summon emergency medical care in a timely manner.

23. Mr. Freeman's symptoms related to the ulcers were reported to Doe defendants on the medical and jail staff but were disregarded. The County and Doe Defendants failed to conduct and analyze appropriate tests, and implement appropriate treatment.

24. Furthermore, Doe defendants on the custody staff continued to ignore Mr. Freeman's suffering when failing to conduct adequate safety checks. Title 15 and the LASD's own policy requires that regular safety checks be conducted, and in so doing, custody staff must look for signs that an inmate is breathing. Doe defendants' failed to comply with Title 15 and LASD's own policy and shirked their explicit responsibility to check for signs of life when conducting safety checks of Mr. Freeman. In so doing, Doe defendants failed to summon emergency medical care in a timely manner and had to rely on inmates to call for help. By that time, Mr. Freeman's body was cool to the touch. Doe defendants' failure to conduct adequate safety checks on Mr. Freeman specifically is made all the more egregious because LASD was on notice that Mr. Freeman suffered from Hepatitis, had attempted suicide before, and was undergoing treatment for opioid and alcohol withdrawals. Defendants were thus on notice that jailers and medical staff should be especially watchful of him.

**DAMAGES**

25. As a direct and proximate result of each Defendants' acts and/or omissions as set forth above, Plaintiffs individually sustained emotional distress and damages for the wrongful death of their son Travis Culver Freeman, including shock, grief and loss, loss of support and familial relationships, loss of love, companionship, comfort, affection, society, services, solace, and moral support, and all other individual and wrongful death damages, and funeral and burial expenses.

26. In addition to the foregoing, as Decedent's successors-in-interest, Plaintiffs are entitled to the recover Mr. Freeman's loss of enjoyment of life and pre-death pain and suffering, and punitive damages and penalties allowable under 42 U.S.C. §§ 1983, 1988, and other state and federal law.

**FIRST CLAIM FOR RELIEF**

**Violation of Civil Rights – 42 U.S.C. § 1983**

**(Against Individual Defendants, Does 1-10)**

27. Plaintiffs Kimberly and Kent Freeman bring this claim for relief in their capacity as the successors in interest and personal representatives of the Decedent. The foregoing claim for relief arose in the Decedent's favor, and the Decedent would have been the plaintiff with respect to this claim for relief had he lived.

28. The individual and Doe defendants, while acting under color of law, deprived the Decedent of his civil rights under the Fourteenth Amendments to the United States Constitution, by their deliberate indifference to his health, welfare and medical needs and by failing to intervene to prevent others from violating Decedent's rights. Among other things defendants failed to check adequately for signs of life when conducting safety checks on Mr. Freeman's cell; failed to respond to complaints by Decedent and others, failed to summon emergency medical care in a timely manner and had to rely on inmates to call for help; and failed to provide medical care, despite being on notice that he had ongoing medical, mental and substance abuse challenges.

29. The individual and Doe defendants, while acting under color of law, deprived Decedent of his civil rights under the Fourteenth Amendment to the United States Constitution when they made intentional decisions with respect to the conditions under which Travis Freeman was confined. The decisions and conditions, include but are not limited to: not monitoring Decedent's cell, per Title 15 requirements, despite being put on notice that he faced mental, medical and substance abuse issues; failing to monitor and adequately respond to audio monitoring. All of these actions and/or omissions were objectively unreasonable and deliberately indifferent.

30. Despite actual and constructive notice of the substantial risk of severe harm facing Mr. Freeman, including, *inter alia*, withdrawal from fentanyl, mental health issues (including a bipolar diagnosis and an attempted suicide), and gastrointestinal issues and need for treatment of his ulcers, the individual and Doe defendants did not

9

take reasonable available measures to abate the risk of injury or death to Mr. Freeman, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious. Defendants knew or should have known that Mr. Freeman was vulnerable, in need of timely medical care, adequate medical care and ongoing monitoring.

31. The individual and Doe defendants knew or should have known that Mr. Freeman had mental and medical issues that required him to receive timely medical care and adequate safety checks.

32. The individual and Doe defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Mr. Freeman and other helpless inmates would be violated by their acts and omissions.

33. As a proximate result of the foregoing wrongful acts by the individual and Doe defendants, and each of them, Mr. Freeman died in his cell from a bleeding ulcer, and thus sustained general damages, including pre-death pain and suffering, and a loss of the enjoyment of life and other damages, in an amount in accordance with proof.

34. In doing the foregoing wrongful acts, Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages in an amount adequate to punish the wrongdoers and deter future misconduct.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 -- Deprivation of Fourteenth-Amendment Right To Parent/Child Relationship

**(Plaintiffs individually against all Defendants)**

35. The aforementioned acts and/or omissions of Defendants and their deliberate indifference to Mr. Freeman's serious medical needs, health and safety, shocks the conscience, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mr. Freeman deprived Plaintiffs of their liberty interest in a parent-child relationship in violation of their substantive due-process rights as guaranteed by the Fourteenth Amendment to the United States Constitution.

36. As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein, including grief and other severe emotional distress over the loss of familial relations with their child and his love, society and companionship.

37. The aforementioned acts and omissions of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages against the individual defendants to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983–Unconstitutional Custom, Practice, or Policy (*Monell*)

**(Against Entity Defendants)**

38. The Entity Defendants, the County and LASD, had both actual and constrictive knowledge of the defective policies, practices, and customs alleged above. Despite having knowledge as stated above of the unreasonable risks and dangers posed to inmates, the County Defendants condoned, tolerated, and through actions and inactions ratified such policies. The County Defendants acted with deliberate

indifference to both the foreseeable effects and consequences of these policies and to the constitutional rights of Decedent, Plaintiffs, and other individuals similarly situated.

39. Furthermore, the policies, practices, and customs implemented, maintained and still tolerated by Entity Defendants were affirmatively linked to and were the moving force behind Mr. Freeman's untimely death.

40. Plaintiffs bring this claim both individually and as a successor-in-interest to Decedent. Plaintiffs seek survival damages, including for the nature and extent of decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as wrongful death damages under this claim. Plaintiffs have individually been deprived of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent and will continue to be so deprived for the remainder of their natural lives.

## FOURTH CLAIM FOR RELIEF

### 42 U.S.C. § 1983 –Inadequate Training (*City of Canton*)

### (Against Entity Defendants)

41. At all times mentioned herein and prior thereto, the Entity Defendants had the obligation to train, instruct, supervise, and discipline their subordinates to assure they respected and did not violate constitutional and statutory rights of inmates such as Mr. Freeman, and to objectively investigate violations of inmates' rights, including, but not limited to the right to be safe and protected from injury in defendants' custody, under the Eighth and Fourteenth Amendments to the United States Constitution.

42. On information and belief, the County and Doe Defendants facilitated, permitted, ratified and condoned similar acts of medical indifference and neglect and were deliberately indifferent to the health and safety of the inmates in general and Decedent in particular. These Defendants knew, or should have reasonably known, of this practice, pattern or policy of constitutional violations, and additionally, of the existence of facts and situations which created the potential of unconstitutional acts,

and had a duty to instruct, train, supervise and discipline their subordinates to prevent similar acts to other persons, but failed to do so. In particular, the Entity Defendants maintained, enforced, tolerated, ratified, permitted, acquiesced in, and/or applied, among others, the following policies, practices and customs:

    a.    Failing to adequately train, supervise, and control custodians of jail inmates in the proper recognition of situations that pose a threat to inmates with mental health, medical and/or substance abuse issues;

    b.    Failing to adequately train, supervise, and control custodians of jail inmates in properly monitoring, deterring, controlling and responding to medical emergencies faced by inmates;

    c.    Failing to establish policies and procedures that enable identification and monitoring of medically compromised inmates;

    d.    Failing to adequately train, supervise, and control custodians of jail inmates in the proper response to provide and/or summon timely emergency medical care;

    e.    Failing to maintain video monitoring/surveillance of inmate areas, such as cell-blocks and cells to ensure safety of inmates, especially those that might be unable to care for themselves;

    f.    Failing to maintain audio monitoring/surveillance of single cells, double-occupancy cells, dormitories, and dayrooms, with audio monitoring capable of alerting personnel who could respond immediately;

    g.    Failing to train, and failing to ensure, employees to conduct adequate and timely inmate safety checks and follow up medical evaluations; and

    h.    Failure to train employees to adequately screen detainees and inmates for mental health disabilities and/or substance abuse issues related to withdrawal from drugs and alcohol, and to monitor inmates identified with health problems secondary to substance abuse and mental health disabilities.

43.     As a result thereof, Decedent sustained the injuries and damages alleged herein, his rights were violated, as were Plaintiffs' rights under the Fourteenth Amendment.

44.     Plaintiffs bring this claim both individually and as a successor-in-interest to Decedent. Plaintiffs seek survival damages, including Decedent's pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well damages for the deprivation of the life-long love, companionship, comfort, support, society, care, and sustenance of Decedent. Plaintiffs will continue to be so deprived for the remainder of their natural life.

## FIFTH CLAIM FOR RELIEF
## Title II of the ADA, Title II of the ADA, and the Rehabilitation Act
## (Against Entity Defendants)

45.     Congress enacted the Americans with Disabilities Act ("ADA") finding, among other things, that discrimination against people with disabilities continues to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

46.     Decedent was a "qualified individual" with an illness, disability and medical impairment that substantially limited his ability to care for himself and control his physical health condition as defined under the ADA, 42 U.S.C. § 12131(2), and Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

47.     Defendant County is a public entity under Title II of the ADA. 42 U.S.C. § 12131(1)(A). Title II of the ADA applies generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Defendants County's and LASD's jails and medical services therefore are covered under Title II of the ADA. Respondeat superior liability applies to Title II claims. Defendants County and LASD are therefore liable under Title II of the ADA for the unlawful acts of their agents and employees. Under the ADA, Defendants County and LASD are mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with disabilities, and to

14

ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

48. Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals." 42 U.S.C. § 12182(b)(1)(A)(iii). Under Title III of the ADA, County is mandated not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a).

49. Defendants County and LASD receive federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794. Defendants County and LASD are within the mandate of the RA that no person with a disability may be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity." 29 U.S.C. § 794.

50. At all material times and as described herein, the Decedent:
(a) was an individual with a disability;
(b) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County and LASD jail services, programs, and activities;
(c) was excluded from participation in, and denied the benefits of the County and LASD services, programs or activities, and was otherwise discriminated against by County and LASD; and,
(d) such exclusion, denial of benefits or discrimination was by reason of his disability.

51. As described herein, Defendants County and LASD failed to reasonably accommodate the Decedent's mental and emotional disability in the course of jailing him., causing him to suffer greater injury in the process than other detainees or arrestees, culminating in his death.

52. The County's and LASD's failures to accommodate the Decedent's disability include but are not limited to:

    (a) causing the violation of the Decedent's rights through the acts and omissions identified above;

    (b) failing to follow lawful and appropriate policies, practices, and procedures for mentally ill inmates;

    (c) failing to provide the Decedent with timely, competent and appropriate hospitalization and supervision in the jail;

    (d) failing to house Decedent in an appropriate unit;

    (e) failing to institute proper medical precautions for the Decedent;

    (f) failing to respond to the medical alert system for inmates who predictably and routinely require immediate, urgent and necessary medical aid;

    (g) failing to develop an effective, integrated, comprehensive system for the delivery of services to persons with disabilities to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected; and,

    (h) other failures to provide accommodations as the evidence may show.

53. As a direct and proximate result of County's and LASD's violations of the ADA and RA, Plaintiffs and the Decedent sustained injuries and are entitled to damages, penalties, costs and attorneys' fees as set forth herein.

**SIXTH CLAIM FOR RELIEF**

**Negligence -- Cal. Civil Code 1714, Cal. Gov't Code § 844.6(d)**

**(Against All Defendants)**

54. At all material times, each individual Defendant and Does 1-10 owed Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

55. The individual Defendants and Does 1-10 herein, agents, servants, and/or employees of County, and within the course and scope of such agency, service, and/or employment, and under color of authority, were negligent in regards to Mr. Freeman's health, safety and welfare, and breached that duty of care. Defendant County is vicariously liable for the acts of its employees pursuant to California Government Code § 815.2.

56. These general duties of reasonable care and due care owed to Decedent by Defendants include but are not limited to specific obligations to provide, or cause to be provided, safe conditions of confinement for Decedent, and to provide, or cause to be provided, protection from death and injury while in LASD custody and vulnerable to withdrawal, completely reliant on LASD jailers and medical staff for the provision of medical care and safety checks.

57. The individual Defendant and Does 1-10, through their acts and omissions, breached each and every duty of care owed to Decedent.

58. As a direct and proximate result of the individual Defendants' and Does 1-10's negligence, Plaintiffs and the Decedent sustained injuries and damages as alleged above.

## SEVENTH CLAIM FOR RELIEF

### Failure to Summon Medical Care

### Cal. Gov't. Code § 845.6

**(Against All Individual Defendants and Does 1-10)**

59. While in in the custody and during the shift of the individual Defendants and Does 1-10, Mr. Freeman was forced to endure the lack of medical treatment, the lack of adequate safety checks, the lack of responsive treatment to his ulcers, even as his pain was obvious, and the lack of timely emergency care once he became unconscious.

60. The individual defendants and Doe defendants herein agents, servants, and employees of the County, and within the course and scope of that agency, service, and/or employment, and under color of authority, failed to take reasonable action to timely summons medical care for Mr. Freeman, as attested to by the fact his body was discovered cool to the touch, and despite the fact they should have known that that he was in need of immediate medical care, in violation of Cal. Gov't Code § 845.6, had they conducted timely safety checks, and had they monitored Mr. Freeman after being put on notice that he suffered from significant health issues.

61. Defendant County is vicariously liable for the acts of its employees pursuant to California Government Code § 815.2.

62. Without timely medical treatment, Mr., Freeman died, giving Plaintiffs a claim for wrongful death damages under California law.

## NINTH CLAIM FOR RELIEF

### Breach of a Mandatory Duty

**(Against All Defendants)**

63. Plaintiffs allege on information and belief that the individual defendants and Does 1-10 violated mandatory duties including, but not limited to, those set forth in California Code of Regulations Title 24, Section 1231.2.22; California Code of

1  Regulations, Title 15, Section 1027.5, as well as those set forth in the Los Angeles
2  County Sheriff's Department Custody Division Manual 4-11/030.00.
3     64. Plaintiffs allege that had the individual defendants and Does 1-10 not
4  breached their mandatory duties, they would have noticed a gravely ill Mr. Freeman and
5  called for necessary emergency medical care of an easily treatable medical problem,
6  namely, ulcers. Therefore, as a proximate result of the individual defendants and Does
7  1-10 failure to perform their mandatory duties, Mr. Freeman died.
8     65. Without timely medical treatment, Mr., Freeman died, giving Plaintiffs a
9  claim for wrongful death damages under California law.
10     66. Defendant County is directly liable for its agents' and employees breaches
11  of mandatory duties, and is vicariously liable for the acts of its employees pursuant to
12  California Government Code § 815.2.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request relief as follows against each defendant:

1. General and Special damages, including individual, survival and wrongful death damages, in an amount according to proof;
2. Exemplary and punitive damages against each individual and Doe defendant, but not against the entity defendants, in amounts according to proof;
3. Cost of suit, including attorneys' fees under 42 U.S.C. § 1988 and relevant provisions of state law; and
4. Such other relief as may be warranted or as is just and proper.

DATED: February 27, 2024        **THE LAW OFFICES OF JOHN BURTON**

By: */s/ John Burton*
John Burton
Attorney for Plaintiffs

DATED: February 27, 2024        **LAW OFFICES OF ERIN DARLING**

By: */s/ Erin Darling*
Erin Darling
Attorney for Plaintiffs

**JURY DEMAND**

Plaintiffs demands trial by jury on all issues so triable.

DATED: February 27, 2024

By: */s/ John Burton*
John Burton
Attorney for Plaintiffs

20